UNITED STATES of America,
Plaintiff–Appellee,

v.

Aubrey Eugene CRYER,
Defendant–Appellant.

No. 90–1258.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1991.

Rehearing Denied March 26, 1991.

David Gaston Luther, Jr., Hughes & Luce and Elizabeth Unger Carlyle, Dallas, Tex., (court appointed), for defendant-appellant.

Delonia Watson, Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In November of 1989, Aubrey Eugene Cryer pleaded guilty to unlawfully possessing a credit card stolen from the mail, a violation of 18 U.S.C. § 1708. Shortly after accepting his plea, the district court held a sentencing hearing, pegged Cryer's total offense level at eleven, and imposed a sentence: thirty-three months of imprisonment, to be followed by three years of supervised release. Cryer now appeals his sentence, arguing that the trial court erred by applying the criminal livelihood adjustment to his base offense level, and by treating his use of a stolen vehicle as "relevant conduct" under Sentencing Guideline § 1B1.3. We affirm.

## I

In 1986, Cryer was sentenced to ten years imprisonment for receipt and concealment of stolen United States Treasury checks. After serving slightly more than two years of this sentence, he was transferred in late 1988 from the Federal Correctional Institution in Fort Worth, Texas, to a halfway house near Dallas. Cryer escaped from his new abode on February 12, 1989, only one month before his anticipated parole date.

On June 14, 1989, Cryer was arrested after unsuccessfully attempting to cash a stolen payroll check at a Dallas convenience store. The arresting officers found Cryer in possession of a stolen rental car; further investigation revealed that the car had been stolen between April 1 and April 3, 1989, at which time it had held a market value of $15,000. Strewn throughout the stolen automobile were several checks and credit cards that did not belong to Cryer, including a CitiBank MasterCard with a loss amount of $2,071.91. The stolen car, the checks, and the credit cards were handed over to United States Post Office authorities the next day.

In an interview with postal inspectors, Cryer admitted that, since his escape in February, he had stolen mail from apartment complexes on approximately 120 occasions. He also confessed to having used stolen credit cards—including the CitiBank MasterCard—for hotels, parties, food, gas, and jewelry. Subsequently, Cryer was indicted on three counts, although owing to a plea agreement two of the three counts against him were dismissed in exchange for his guilty plea with respect to the 18 U.S.C. § 1708 charge.

At Cryer's sentencing hearing, the district court calculated a base offense level of four, pursuant to Guideline § 2B1.1(a). It then added five points to this figure for a loss amount between $10,001 and $20,000, as provided for by § 2B1.1(b)(1). To arrive at this loss amount, it added the $2,071.91 in MasterCard charges to the $15,000 market value of the stolen car, the use of which it deemed relevant conduct under Guideline § 1B1.3. The court further increased Cryer's offense level after applying the Guideline for offenders with a criminal livelihood, Guideline § 4B1.3, which mandates a minimum offense level of thirteen unless the acceptance of responsibility adjustment also applies. Finding that Cryer indeed had accepted responsibility, the court computed a total offense level of eleven and imposed its sentence.

## II

Cryer raises two arguments against his sentence; we address these in turn. At the outset, however, we note that "the district court's sentence [is to be upheld] so long as it results from a correct application of the Guidelines to factual findings which are not clearly erroneous." *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989); 18 U.S.C. § 3742(e)(2). *See also United*

*States v. Barbontin,* 907 F.2d 1494, 1497 (5th Cir.1990).

## A

Cryer's first contention involves the application of Guideline § 4B1.3., which reads as follows:

§ 4B1.3. *Criminal Livelihood*

If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which case his offense level shall be not less than 11.

The second application note to this section, critical to Cryer's claim, reads thusly:

2. "Engaged in as livelihood" means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law[, *i.e.,* $6,700]; and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.,* the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).

In applying § 4B1.3, the district court ruled that Cryer satisfied both prongs of application note two. Cryer's argument is that he met neither requirement: First, he asserts that he did not earn $6,700 from his "pattern" of criminal behavior; and second, he interprets the "primary occupation" prong as applying only to defendants whose criminal sprees have lasted no fewer than twelve months.

■ We think this argument untenable. Insofar as part (1) of the application note is concerned, Cryer concedes that the $2,071.91 MasterCard debt, along with some portion of the stolen car's value, is attributable to him as income "derived ... from [a] pattern of criminal conduct." His bone of contention is only that the district court could not count as income the *entire* market value of the car, and that the court never indicated how it reached the conclusion that the car provided Cryer with at least $4,628.09 in income. These points overlook the wide discretion district courts are afforded in implementing the sentencing guidelines, particularly the deference that they enjoy with respect to their findings of fact. Although the lower court could have been more precise when imputing income to Cryer from the automobile, its figure cannot be labelled clearly erroneous. Alternatively stated, it would not have been error to treat the entire market value of the car—$15,000—as income for the year in which Cryer stole it.

■ The second half of Cryer's argument makes the mistake of misreading part (2) of the application note so as to make mandatory a twelve-month period of criminal conduct.[1] We find the note quite clear: It requires only that "[the pattern of] criminal conduct" be the defendant's "primary occupation" during the relevant twelve-month span, not that the defendant engage in crime for an entire year. Nevertheless, even if the note were ambiguous, the Commission would not have relied on imprecise language to establish a twelve-month criminal activity requirement but, instead, would have cast such a prerequisite in no uncertain terms. We add that our rejection of this portion of Cryer's argument comports with the holdings of the other circuits that have thus far addressed related if not identical issues. *United States v. Irvin,* 906 F.2d 1424 (10th Cir.1990) *United States v. Hearrin,* 892 F.2d 756, 760 (8th Cir.1990) *United States v. Luster,* 889 F.2d 1523 (6th Cir.1989).

---

1. Of course, if Cryer were correctly reading part (2) of the note, he would fall short of its requirement since he was arrested on the current charge only four months after escaping from the Dallas halfway house.

## B

Cryer's second argument charges that the district court improperly treated his use of the stolen car as "relevant conduct" under Guideline § 1B1.3. As Cryer admits, however, we need not reach this issue given our resolution of his first assignment of error.[2] Nevertheless, it is clear to us that the district court was not clearly erroneous in concluding that the stolen automobile was used in the criminal enterprise, especially given the fact that credit cards and checks, which did not belong to him, were found in the car.

## III

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**2.** The brunt of Cryer's second argument is that the trial court improperly added five points to his base offense level of four. Because Cryer is subject to the criminal livelihood adjustment, his total offense level will remain at eleven, the disposition of his second ground of error notwithstanding. *See* Guideline § 4B1.3.