UNITED STATES of America, Appellee,

v.

**Glen Alan MUZINGO, Appellant.**

No. 93–1107.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1993.

Decided July 20, 1993.

---

* THE HONORABLE JIMM L. HENDREN, United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable William C. Cambridge, United States District Judge for the District of Nebraska.

**362**

Jonathan B. Hammond, Cedar Rapids, IA, argued, for appellant.

Janet L. Papenthien, Asst. U.S. Atty., Cedar Rapids, IA, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Appellant Muzingo was convicted of bank larceny and possession of a machine gun, violations, respectively, of 18 U.S.C. § 2113(b) and 26 U.S.C. § 5861(d). He does not challenge his convictions, but asserts that the district court[1] erred in imposing a 37-month sentence consecutive to his undischarged sixty-year state sentence. For the reasons that follow, we affirm.

## I.

The district court decided that the appropriate guideline range for Muzingo's offense was 30 to 37 months and appellant makes only one complaint about that initial determination. Under U.S.S.G. § 3B1.3, the district court awarded a two-point enhancement because the defendant had "used a special skill" to effect his crime, that is, a skill (according to Application Note 2 to that section) that is "not possessed by members of the general public and usually requiring substantial education, training or licensing."

The testimony at trial justified the conclusion that the defendant had broken into his former wife's safe-deposit boxes and stolen their contents. There was evidence that defendant had effected this entry by manufacturing keys to the lock boxes, a skill that he acquired during his ten-year employment with a company that manufactures safe-deposit boxes and keys. There was testimony, too, that defendant had had in his possession technical drawings illustrating the manner of making keys to Lefebre and Diebold boxes, the kinds of boxes that belonged to his former wife. He was said to have bragged that he had a "little gadget" that enabled him to determine the profile of the keys that he required. The trial court concluded from this evidence that defendant had used "a special skill" to commit his crime, and that conclusion is not only not clearly erroneous, it seems virtually irresistible. We

---

1. The Honorable Edward J. McManus of the Northern District of Iowa.

regard the argument that the defendant could be said to have used a skill "possessed by the general public" as wholly meritless. Safe-deposit boxes are generally regarded as providing maximum privacy and security, and we cannot think that the kind of larceny that defendant committed was anything less than altogether extraordinary.

## II.

■ Defendant's main complaint about his sentence is that the district court directed him to serve it consecutively to his state-court sentence of sixty years. Under U.S.S.G. § 5G1.3(c), a consecutive sentence should be imposed in an amount "necessary to achieve a reasonable incremental punishment" for the federal offense. In order to determine what incremental sentence, if any, was appropriate to the case, the court constructed a hypothetical guideline produced by assuming that all relevant offenses, both state and federal, were federal offenses. U.S.S.G. § 5G1.3, Commentary Note 3. When it did that, however, it was revealed that the resulting sentence fell below the state sentences that the defendant was already serving. In other words, as the court put it, the state sentence "exceeds the hypothetical combined offense level." ·

The district court nevertheless directed that the entire 37–month sentence run consecutively to the state sentence, justifying its decision as a departure under U.S.S.G. §§ 5K2.2, 5K2.3, 5K2.8, and 2A2.1, commentary (n. 3). The court cited the "devastating physical and psychological injury to the victim, extreme psychological injury to Jeff Muzingo (the son of the victim and the defendant) ..., together with the extremely heinous, cruel and brutal nature of defendant's conduct and the extreme dangerousness of the weapon and the manner in which it was used endangering others" as reasons for the departure.

The court, in making these characterizations of defendant's conduct, had reference to the circumstances which underlay his state court convictions. Defendant's larceny was only a minor part of a campaign of terror against his former wife that included threatening her and beating her, and that culminat-ed in placing a bomb (disguised as a gift) in her car, that exploded in her face. The force of the explosion tore the roof off the car, blew a hole in the floor of the car, and left her severely and permanently injured. Her right arm was torn off and her left arm was damaged; her left eye had to be removed and her right eye was injured; her eardrums exploded and her vocal cords were damaged. We think that these hideous injuries, and the calculated cruelty that necessarily had to underlie their infliction, quite clearly places this case outside of that "heartland" of cases that the guidelines were intended to rule. See, e.g., United States v. Tucker, 986 F.2d 278 (8th Cir.1993), (citing U.S.S.G. Ch. 1, Pt. A 4(b), intro. comment); and United States v. Saunders, 957 F.2d 1488 (8th Cir.1992). The trial court believed that "an upward departure is warranted under any of [the cited guideline] sections individually and under all of them together," making it clear that it thought that the injuries inflicted on defendant's innocent victim would, by themselves, have furnished adequate support for its decision to depart. We agree.

Defendant argues, however, that the conduct underlying the state convictions may not properly be relied on to justify a departure because it pertained to "unrelated ... offenses and [was not] the conduct for which he was tried in the United States District Court." He goes on to assert that if he had "not been serving a prior undischarged term of imprisonment, the Court would not have applied the total punishment calculation which led to his prior conduct being considered, and arguably, he would not have been subject to departure." (Appellant's brief, p. 6.) We disagree. We see no difference between this case and those cases in which uncharged conduct is relied upon in order to construct a guideline range. See, e.g., United States v. Galloway, 976 F.2d 414 (8th Cir.1992); and United States v. Morse, 983 F.2d 851 (8th Cir.1993). We know of no authority that restricts district courts, in considering a motion to depart, to a reliance only on circumstances that relate to charged conduct. We view the present case as entirely analogous and discern no distinction in the

fact that the uncharged conduct happened to constitute a crime under state law.

### III.

For the reasons given, we affirm the district court.